The Chancellor.
The question arising upon the facts In this case is, whether the descended lands or the devised lands shall pay the debts.
The order in which assets are applicable in payment of debts, as stated by Ld. Thurlow, is,—1st, The personal estate ; 2d, Ordinarily speaking, estates devised for the payment of debts; 3d, Estates descended; 4th, Estates specifically devised, though they are charged generally with the paymeai of debts. Sir E. P» Arden, Master of the Rolls, (afterwards Ld. Alvanlcy,) states the four classes thus : 1st, The general personal estate, unless exempted expressly, or by plain implica" *226 tion; 2d, Any estate particularly devised for the purpose and only for the purpose of paying debts; 3d, Estates descended ; 4th, Estates specifically devised.
The will in this case is nothing more than a general charge on all the real estate the testator had at the time of making his will, for the payment of his debts, or of such portion thereof as his personal estate should be insufficient to pay.
The testator having acquired lands subsequent to the making of the will, which on his death descended to his heirs at law, the question is, whether such a general- charge on all the estate he had at the time of making the will, is to have the effect of charging the lands devised subject to such general charge, in exemption of the after acquired and descended lands.
At the making of the will the testator could have had no intention as between the devised estate and the descended estate, for the reason that at that time he owned none but the devised estate. The will, then, is not a selection or designation of certain lands to pay debts, in exoneration of other lands.
In Galton v. Hancock, 2 Atk. 424, 430, decided by Ld. Hardwicke, first in 1742, and again in 1743, the defendant’s husband being seized in fee of an estate, mortgaged it in 1724, to secure the payment of a bond he had previously given. In 1728, he made his will, and devised to his wife this estate in fee, and also a lifehold estate. The will sets out with a desire that all his debts may be paid in the first place; and concludes with a general residuary devise to his wife, whom he makes executrix. He afterwards bought the reversion in fee of the lifehold estate, and died without altering his will. It was held to be clear, that the purchase of the reversion after the making of the will was a revocation of the will, fro tanto ; and consequently this latter estate descended upon the heir. The question was, whether the descended estate or the devised estate should pay the debt secured by the mortgage. The Ld. Chancellor first decided that the devisee should take the devised estate cum onere; but afterwards, on a re-hearing, he decided that the descended lands should pay the debt.
This case was decided in favor of the devisee, notwithstanding the testator had left a mortgage on the estate devised. The- ■ Chancellor said, that in equity, the land is only regarded as *227 security for the money; and that the election of the holder of the bond and mortgage, .as to the course he will take to get his money, will not determine which fund ought properly to be charged, nor vary the right as to those funds. In the case before us, there was no mortgage: the debts are general bond debts, or simple contract debts only.
The case of Powis v. Corbet, in 1747, also decided by Ld. Hardwicke, was a case in which the testator had created a particular trust out of particular land, for the payment of debts, and subject to that trust devised it over. It was held, that the devisee could take no benefit but of the remainder after the whole burden upon it was discharged. In this case Ld. Hardwicke expressly recognized the decision in Galton v. Hancock.
In 1780, the case of Davis v. Toppe, 2 Bro. Ch. Rep. 524, came before Ld. Thurlow. Toppe, seized of real estate subject to a mortgage, made bis will, and as to his worldly estate, real or personal, after payment of bis debts, disposed thereof as follows : to his sister Sarah Lloyd an annuity for life, and several pecuniary legacies : and charged all his real and personal estate with the payment of his debts and legacies; and subject thereto, devised ail his real estate to his nephew for life, with remainders over, and iiis personal estate to his said nephew. After making the will -he purchased an estate, and died without issue, leaving the said Sarah and her sister his heirs at law, on whom the after-purchased estate descended. In this case, also, the lands devised were subject to a mortgage at the time of the devise, and remained so to the death of the testator. The case of Galton v. Hancock was relied -upon on the part of the devisees; and the case of Powis v. Corbet was cited on the other side. In giving judgment, lid. Thurlow said, he heard the devisees principally to obtain a distinction between Galton v. Hancock and Powis v. Corbet. He decides the case before him on the following reasoning. After stating that in Powis v. Corbet two estates were in the possession of the testator when he made his will, and -that one was devised, charged with a term for the payment of debts, he says, that the effect of the full principle of the decree in that case, and in the case of Galton v. Hancock, is simply this: “ Where a testator gives the whole of his estate at the -time of the devise, subject to a gene *228 ral charge, he means to give the devisee all that can be saved of his affairs after payment of his debts. If he afterwards becomes possessed of another estate, thus much is clear; by charging his estate, (that is, all he had at -the time,) with the payment of his debts, it could not be in his contemplation to charge the estate he gave in favor of an estate whieh he had not. In such case, the estate descended, (whieh the testator had not at the time,) could not have been the object of an intention- to exempt: whereas, if a testator has two estates, and charges one, the inference is that he means to exonerate the other.” “ The principle (he says) which seems’ to distinguish the case of Galton v. Hancock, is this: when a general charge is made, applicable to the whole estate of the testator at the time,- no intention appears, that the estate is so charged with a view to exonerate future property; but where a testator charges part of his estate, leaving other part (which he has at the time) to descend, his inclination to burthen a part in exoneration of the rest is manifest.” It seems to me that this reasoning is entirely satisfactory.
The case of Milnes v. Slater, 8 Vesey, 295, decided by Ld. Eldon, is not opposed to this view. The question there was, whether the will created only a general charge, or a particular charge on a particular fund. The will declared, that if, at the decease of the testator, there should be any mortgages or other incumbrances affecting his estates in Bantry, Austerfield and Timberland, or any of them, the same should not be discharged out of his personal estate, but should remain charged on his said estates respectively, until discharged by the several tenants for life, to whom the said estates were respectively limited. The testator purchased other estates after making his-will, in Bantry, Austerfield and other places, which descended to his heirs-at-law. The question was, whether -the descended estates should be applied to pay the mortgages on the estates at Bantry, Austerfield and Timberland. Ld. Eldon decided, that “ a real fund had been created” in that case, for the payment of the mortgage debts. He said that “ a real fund created” was the .construction he put on the term “selected,” used by Ld. Alvanley, in Manning v. Spicer. He said he perfectly agreed, that if the testator had done no more than generally *229 subjecting the mortgaged estates, merely leaving them subject as the law would if he had said nothing, that would not be enough to protect the descended estates. He declared his opinion to be, that the testator had created a particular fund by the words of the above stated clause, and that thereby the descended estates were exonerated.
I will not go further into the cases. They have all been reviewed by Chancellor Kent, in Livingston v. Newkirk, 3 John. Ch. Rep. 312; a case presenting the very question raised here, and deciding that the descended lands were first liable. It will be so decreed in this case.
Decree accordingly.